UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LATOYA RICHARDSON,

                              Plaintiff,

     -v-

RICHARD BUCKHEIT and KINGS
COUNTY OFFICE OF THE PUBLIC
ADMINISTRATOR,

                              Defendants.

---

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:   9/29/2020          │
└─────────────────────────────────┘
```

No. 19-cv-8505 (MKV)
OPINION AND ORDER
GRANTING MOTION TO DISMISS

MARY KAY VYSKOCIL, District Judge:

     Plaintiff Latoya Richardson asserts claims for violations of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), the Civil Rights Act of 1866,

42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), the New York

State Human Rights Law ("NYSHRL"), §§ 296 *et seq.*, and the New York City Human Rights

Law ("NYCHRL"), §§ 8-101 *et seq.*  Defendants Richard Buckheit and the Kings County Office

of the Public Administrator move to dismiss the complaint, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, for failure to state a claim.  For the reasons set forth below, the

motion to dismiss is GRANTED.

I.     BACKGROUND[1]

     Plaintiff Latoya Richardson is a "Black female" and a "current employee" of the City of

New York.  FAC ¶ 2.  Specifically, Richardson works as the office manager for Defendant the

Office of the Public Administrator of Kings County ("KCPA"), which administers the estates of

---

[1] The facts are taken from the First Amended Complaint [ECF #22], hereinafter "FAC."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true.").

decedents when nobody would otherwise do so.  *See id*. ¶¶ 2, 4, 22.  Defendant Richard Buckheit

"was appointed by the state of New York to be the Commissioner at KCPA."  *Id.* ¶ 23.  He is

Richardson's "direct supervisor."  *Id.* ¶ 7.

Richardson does not allege that she was fired or demoted, that she sought and was denied

a promotion, or that she suffered a decrease in salary.  However, she alleges that when Buckheit

became the Commissioner, her "growth and advancement" at KCPA "stopped."  *Id.* ¶ 27.  She

alleges that he "strip[ped] away" some of her responsibilities and assigned them to "individuals

outside of [her] protected group."  *Id.*  She also alleges that he required her to assume other

responsibilities, including responsibilities she considered outside of her job description or "lower

than her position."  *Id.* ¶¶ 29, 31.  And she generally asserts that there was "a clear pattern of

discrimination targeting Black employees."  *Id.* ¶ 90.  Richardson also alleges that Buckheit

retaliated against her for complaining.  *Id.* ¶ 37.

Specifically, Richardson alleges that, shortly after Buckheit became the Commissioner in

October 2015, he "forced" her to assume the responsibilities of an employee who had retired, a

"Case Manager" named Ms. Love, "in addition to [her] pre-existing duties."  *Id.* ¶¶ 28, 29.  She

does not explain how the responsibilities of a case manager compare to those of office manager.

However, Richardson also alleges that Buckheit "forced [her] to perform tedious tasks that were

lower than her position in order to demean her, such as taking out the agency outgoing mail, and

fetching and putting his newspaper on his table outside his office door."  *Id.* ¶ 31.

Richardson alleges that "unlike former officer managers, like Mr. Johnson, Plaintiff was

not provided with certain benefits and perks," including a "more spacious desk" and a "park[ing]

plaque."  *Id.* ¶¶ 65, 66; *accord* ¶ 30.  At some point in 2016, Buckheit "took away the office and

petty cash keys" and gave them to a "non-Black employee, Ms. Wang, who has the same civil

title" as Richardson. *Id.* ¶ 98; *see* ¶ 100. In 2017, Buckheit gave the "office manager desk to Ms. Yaritzy Estevez ("Ms. Estevev"), another non-Black employee." *Id.* ¶ 67. In 2019, Buckheit also "took away the task of painting the office, which was assigned to Plaintiff as office manager, and instead assigned it to Plaintiff's subordinate, Christina Meinster ("Ms. Meinster"), who is not Black." *Id.* ¶ 82.

Richardson further alleges that Buckheit simply "took away some of [her] office manager responsibilities." *Id.* ¶ 72. "For example, in 2017, Buckheit prohibited [Richardson] from working with [a certain vendor] for estate vault property." *Id.* He has also prohibited her from going on investigations since 2017. *Id.* ¶ 102.

On "April 5, 2016, [Richardson] went to the Equal Employment Office ("EEO") in order to file an official complaint of discrimination against" Buckheit. *Id.* ¶ 33. She also "met with one of the Justices at the Kings County Surrogate's Court," where she "reiterated her complaints of discrimination" and harassment. *Id.* ¶¶ 35, 36. Richardson alleges that, "following her EEO complaint and her meeting with the Justice," Buckheit retaliated against her. *Id.* ¶ 37.

Specifically, Buckheit started calling Richardson "Lucy," a reference to the character in the Peanuts comic strip. *Id.* ¶ 38. On April 28, 2016, while Buckheit and Richardson were "alone in the office," Buckheit walked into Richardson's office, stood "in very close proximity to her," and "lean[ed] over her," "pretending to see if her email [was] working properly." *Id.* ¶ 39. This "startled" her, and she "immediately pushed her chair away from him in horror." *Id.* ¶ 40. On May 3, 2016, Richardson sent an email to Buckheit and the deputy commissioner "complaining of Buckheit's inappropriate and harassing behavior and request[ing] that she no longer be left alone with Buckheit in the office." *Id.* ¶ 42. Richardson alleges that, on May 23, 2016, Buckheit "took away . . . compensation time" that had been approved before her email. *Id.*

¶ 43.  She further alleges that, "[i]n contrast, Buckheit allowed [two] non-Black employees . . . to use comp time."  *Id*. ¶ 44.

Richardson next alleges that Buckheit "further retaliated against her by taking away [an] accommodation" that allowed her to leave early on Fridays, *id*. ¶ 47, but the timeline in her pleading is contradictory.  She alleges that, "[p]rior to Plaintiff complaining of Defendant Buckheit's discriminatory and harassing conduct," her employer accommodated her childcare needs by allowing her to take a lunch break at 4:00 p.m. on Fridays.  *Id*. ¶¶ 46–50.  However, Richardson specifically alleges that, on "April 4, 2016," *id*. ¶ 50, which was the day before she allegedly went to the EEO, *id*. ¶ 33, she "complained of Buckheit for changing her lunch break time on Fridays," *id*. ¶ 50.  Richardson does not say to whom she complained about the change to her Friday lunch break.

Richardson also alleges that "starting on April 5, 2016, after [her] April 4th complaint" about the change to her Friday lunch break, Buckheit "retaliated against her by starting to hold meetings during [her] lunch break[,] preventing her from attending the meetings."  *Id*. ¶ 51.  She adds that "Buckheit's goal was to adversely impact her work."  *Id*. ¶ 52.  She does not allege that missing these meetings did, in fact, impact her work.

Richardson alleges that "[i]n June 2016, Buckheit hired an intern by the name of Sophia, who is White, and instructed her to keep track of [Richardson's] whereabouts, movements, hours of work, and of [Richardson's] work."  *Id*. ¶ 53.  "Sophia would invade [Richardon's] work space and would tell [her] how to do her job."  *Id*. ¶ 54.  Buckheit also allowed Sophia to "access the vault unsupervised" and, according to Richardson, Sophia put property back "in the wrong place" and "open[ed] sealed property bags" that should not have been opened.  *Id.* ¶ 55.  On June 29, 2016, Richardson "sent Buckheit an email complaining of and raising serious concerns

regarding Sophia's conduct," but Buckheit did not respond to her email or take "any action" to address her concerns.  *Id*. ¶ 56.

"On July 16, 2016, [Richardson] attended a pre-scheduled meeting with EEO with regard to her complaints of discrimination and harassment against Buckheit."  *Id.* ¶ 58.  "On August 1, 2016," allegedly "in retaliation for" Richardson "attending the EEO meeting, Buckheit ordered her to complete the tasks of another co-worker that are not part of her job description, which prevented her from attending to her own responsibilities."  *Id.* ¶ 59.  "The other co-worker, Mr. Bob, is a White male employee."  *Id.* ¶ 61.  Richardson alleges that "whenever [she] complained and objected to Buckheit about the inappropriate assignment and his retaliatory actions, he would respond by stating that she can step down and relinquish her officer manager position if she is not pleased with his conduct."  *Id*. ¶ 64.

At some point, "Buckheit stated to the KCPA staff, including [Richardson], that Jillian, Mr. Ramen and Sophie, who are all White, were being elevated in their positions and receiving promotions because they did not sign the EEO complaint that other employees signed complaining of Buckheit's discriminatory and harassing behavior."  *Id.* ¶ 92.  On another, undated, occasion, "Buckheit allowed another male employee, Mr. Guzman, to work overtime, while prohibiting Plaintiff from working overtime."  *Id.* ¶ 103.

Richardson alleges that Buckheit made two racist comments to her, but Richardson does not clearly allege that Buckheit ever mentioned her race.  First, in 2017, Buckheit accused Richardson of "having an 'attitude' like a Black woman."  *Id.* ¶ 73.  Because only the word "attitude" appears in quotation marks, it is not clear whether Richardson alleges that Buckheit actually said that she had an attitude "like a Black woman," *id*., or she merely believes that was the implication.  Second, "[i]n the Summer of 2019, during a staff meeting, Buckheit openly and

public[ly] stated to [Richardson], 'you can take down the barricade,' referring to [her] workplace and implying that Black individuals are threatening." *Id.* ¶ 80.

Richardson also generally accuses Buckheit of a "clear pattern of discrimination targeting Black employees." *Id.* ¶ 90. In particular, "on more than one occasion," he "turn[ed] the office lights off while" she and "other Black employees" were still in the office. *Id.* ¶ 45. Richardson asserts that Buckheit also "demoted [an employee named] Mr. Culler for the simple reason that Mr. Culler is a Black employee." *Id.* ¶ 86.

Richardson also asserts that Buckheit "stereotyp[ed] Black employees as . . . likely to commit crime[s]." *Id.* ¶ 89. In particular, she alleges that Buckheit once falsely accused her of stealing a check when, in reality, he lost the check. *Id.* ¶ 79. She adds that he accused another black employee of "stealing weapons from a deceased's apartment, while other White employees who removed significant amounts of cash from [sic] deceased's apartment were no[t] accused of stealing money." *Id.* ¶ 88.

Richardson filed a charge of discrimination with the EEOC on March 13, 2019. *Id.* ¶ 15. However, on July 12, 2019, the EEOC dismissed the charge on the ground that KCPA "employs less than the required number of employees or is not otherwise covered by" Title VII [ECF #22-1 ("Notice of Right To Sue")].

Richardson initiated this action, proceeding *pro se*, by filing a complaint [ECF #2]. She later retained counsel, who filed the First Amended Complaint on her behalf [ECF #15, 22 ("FAC")]. The First Amended Complaint asserts: (1) a claim for discrimination based on race against KCPA under Title VII of the of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–1 *et seq.*; (2) a claim for discrimination based on race against Buckheit and KCPA under 42 U.S.C. § 1981 ("Section 1981"); (3) a claim for discrimination based on race against

Buckheit and KCPA under the New York State Human Rights Law ("NYSHRL"), NY Exec.

Law §§ 296 *et seq.*; (4) a claim for discrimination based on race against Buckheit and KCPA

under the New York City Human Rights Law ("NYCHRL"), §§ 8-101 *et seq.*; (5) a Title VII

claim for discrimination based on sex against KCPA; (6) a NYSHRL claim for discrimination

based on sex against Buckheit and KCPA; (7) a NYCHRL claim for discrimination based on sex

against Buckheit and KCPA; (8) a Title VII claim for retaliation against KCPA; (9) a NYSHRL

claim for retaliation against Buckheit and KCPA; (10) a NYCHRL claim for retaliation against

Buckheit and KCPA; (11) a Title VII claim for hostile work environment against KCPA; (12) a

NYSHRL claim for hostile work environment against Buckheit and KCPA; (13) a NYCHRL

claim for hostile work environment against Buckheit and KCPA; and (14) a state law claim for

the tort of negligent supervision against KCPA.  Richardson seeks a declaratory judgment that

the defendants' actions are unlawful, "equitable relief of back pay, front pay, salary and fringe

benefits," and other money damages.

The defendants now move to dismiss the First Amended Complaint in its entirety with

prejudice [ECF #23, 24 ("Def. Mem."), 37 ("Def. Reply")].  Richardson opposes that motion

[ECF #34 ("Pl. Opp.")].

## II.      LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

Court must accept as true all factual allegations in the complaint and must draw all inferences in

the plaintiff's favor.  *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).  "To

survive a motion to dismiss," the plaintiff must allege "sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.   ANALYSIS

A.  Richardson's Section 1981 Claims Must Be Dismissed.

Richardson seeks to assert claims against Buckheit and KCPA for discrimination based on race in violation of Section 1981.  FAC ¶¶ 113–116.  However, "[Section] 1981 does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 620–21 (2d Cir. 2018).  Rather, "the express cause of action for damages created by [Section] 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in [Section] 1981 by state governmental units."  *Id.* (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).  Both Buckheit and KCPA are state actors.  *See Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 284–85 (S.D.N.Y. 2019).  Thus, Richardson's Section 1981 claims against them must be dismissed.  *See Duplan*, 888 F.3d at 620–21; *Gonzalez*, 377 F. Supp. 3d at 284–85.

Richardson responds that the Court should simply treat her Section 1981 claims as if she had asserted Section 1983 claims, which she did not.  She argues that courts have "held that a plaintiff's [Section] 1981 claims are incorporated into the [Section] 1983 claims when brought against state actors, and have analyzed a plaintiff's [Section] 1981 claims under the [Section] 1983 claims."  Pl. Opp. at 6; *see Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) ("[Plaintiff's Section] 1981 claims are encompassed by her [Section] 1983 claims, and both are therefore analyzed under [Section] 1983.").  However, Richardson does not assert any claims under Section 1983 that can encompass her Section 1981 claims.  Richardson is represented by

counsel, who filed her current pleading.  It is not the Court's role to amend her pleading further.
Accordingly, Richardson's Section 1981 claims are dismissed.

B.  <u>Richardson's Title VII Claims.</u>

Richardson asserts four claims against KCPA under Title VII: (1) discrimination based
on race; (2) discrimination based on sex; (3) retaliation; and (4) hostile work environment.  The
defendants first argue that the Court must dismiss all of Richardson's Title VII claims because
KPCA employs fewer than fifteen people.  Next, they argue that virtually all of Richardson's
allegations are time-barred.  The defendants then argue that Richardson fails adequately to plead
her four claims.  The Court addresses each argument in turn.

1.  <u>Richardson Adequately Alleges that KCPA Had Fifteen or More Employees.</u>

The defendants first contend that the Court must dismiss all of Richardson's Title VII
claims because the EEOC determined that KCPA employs fewer than fifteen employees and,
therefore, is not subject to suit under Title VII.  Def. Mem. at 8–9; Def. Reply at 3–4.  The
defendants are incorrect.  Richardson adequately alleges that KCPA employed more than fifteen
employees during the relevant period.  FAC ¶ 6.

To be sure, "a Title VII defendant wishing to defeat a plaintiff's claim on the ground that
it lacks fifteen employees is normally entitled to seek dismissal if the complaint shows on its face
that the element of statutory coverage is lacking."  *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358,
265-66 (2d Cir. 2000).  Here, the EEOC Notice of Right To Sue, which is appended to
Richardson's pleading, states that KCPA "employs less than the required number of employees"
under Title VII [ECF #22-1].  However, Richardson specifically alleges that KCPA "had more
than 15 employees at all relevant times."  FAC ¶ 6.  And the determination of the EEOC does not

bind the Court.  *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 793 (1986) (explaining that federal court review "would be pointless" otherwise).

Although the defendants attempt to dismiss as "conclusory" Richardson's allegation that KCPA had more than fifteen employees, Def. Mem. at 9, it is clearly a factual allegation that the Court must accept as true at this stage, *see Littlejohn*, 795 F.3d at 306; *Watkins v. Commercial Fin. Ass'n*, No. 13-cv-7475, 2014 WL 5017828, at *4 (S.D.N.Y. Sept. 29, 2014) (after granting motion, granting plaintiff leave to amend to "allege that, contrary to the EEOC's determination, [his employer] had fifteen or more employees during the relevant period).  At this stage, neither the defendants' contention, nor the EEOC's determination that KCPA is not provides a basis for the Court to dismiss all of Richardson's Title VII claims.

2.  While Most of Richardson's Allegations of Discrimination and Retaliation Are <u>Time-Barred, all of her Hostile Work Environment Allegations Are Timely.</u>

The defendants next argue that nearly all of Richardson's allegations are time-barred. With respect to her discrimination and retaliation claims, the defendants are correct.  However, the time bar does not apply to her hostile work environment claim.

"A Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'"  *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) (42 U.S.C. § 2000e–5(e)(1) (2000)).  Richardson filed her charge with the EEOC on March 13, 2019.  Thus, any allegedly unlawful employment practices that occurred prior to May 17, 2018 are time-barred.  *See id.*

Richardson responds that the 300-day limitations period should be tolled, and the Court should consider all of her allegations, under the "continuing violation doctrine."  Pl. Opp. at 11

(quoting *Choi v. Chem. Bank*, 939 F. Supp. 304, 311 (S.D.N.Y. 1996)).  Richardson's argument is unpersuasive.  The continuing violation doctrine does not apply.

In general, each allegedly discriminatory act "starts a new clock" for statute of limitations purposes, such that all alleged acts falling outside the limitations period are time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  However, "[t]he 300–day EEOC filing limitations period can be tolled by evidence of a continuing violation, . . . thus allowing a district court to consider incidents occurring outside of the 300–day window."  *Choi*, 939 F. Supp. at 311 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  "Under [the] continuing violation doctrine, where the defendant has 'engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation.  In such circumstances, if the charge has been filed no later than 300 days after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well.'"  *Dukes v. Steinman, Boynton, Gronquist & Birdsall*, No. 93-cv-7044, 1994 WL 406090, at *2 (S.D.N.Y. July 29, 1994) (quoting *Association Against Discrimination in Emp., Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir. 1981)).

This doctrine does not apply, however, where a complaint alleges discrete incidents of discrimination over a period of time.  *See Choi*, 939 F. Supp. at 311.  Instead, it applies only "to cases involving *specific* discriminatory policies or mechanisms such as discriminatory lists, . . . or discriminatory employment tests."  *Id*. (emphasis added).  Thus, "even serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting *Milani v. International Business Machines Corp., Inc.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004)).  Indeed, "[a]s a general matter, the continuing violation doctrine is heavily

disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Id.* (quoting *Kubicek v. Westchester Cty.*, No. 08-cv-372, 2009 WL 3720155, at *6 (S.D.N.Y. Oct. 8, 2009)).

Richardson does not allege that KCPA discriminated against her pursuant to any "specific discriminatory policies or mechanisms such as discriminatory lists, . . . or discriminatory employment tests." *Choi*, 939 F. Supp. at 311.  Rather, she alleges only a general "pattern of discrimination targeting Black employees."  FAC ¶ 90.  Richardson describes a variety of discrete incidents, and she alleges that each incident is an instance of Buckheit's "pattern" of anti-black discrimination, but no specific policy or mechanism unites the incidents she describes. For example, in 2017, Buckheit gave the "office manager desk" to Ms. Estevez, a "non-Black employee."  *Id.* ¶ 67.  In 2019, he reassigned the task of painting the office from Richardson to her subordinate, Ms. Meinster, who is not black.  *Id.* ¶ 82.  Even if these incidents can be seen as broadly "related acts of discrimination," *Bermudez*, 783 F. Supp. 2d at 574, they clearly are not violations pursuant to a "specific discriminatory polic[y]" akin to a discriminatory employment test, *Choi*, 939 F. Supp. at 311.  As such, Richardson's allegations "do not warrant application of the continuing violations doctrine." *Bermudez*, 783 F. Supp. 2d at 574.

Thus, with respect to Richardson's discrimination and retaliation claims, the Court may consider only incidents that allegedly occurred within the 300-day statute of limitations period. Richardson specifically alleges that three incidents took place after the May 17, 2018 cut-off date.  As noted above, Buckheit reassigned the task of paining the office in 2019.  FAC ¶ 82.  "In the Summer of 2019," he told Richardson, "'you can take down the barricade,' referring to [her]

workplace and implying that Black individuals are threatening." *Id.* ¶ 80.  And "in the Fall of 2019," Buckheit falsely accused Richardson of stealing a check.  *Id.* ¶ 79.

The time bar does not apply, however, to Richardson's hostile workplace environment claim.  "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115.  "The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  "In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.  Thus, the Court will consider all of the allegations in the First Amended Complaint in connection with Richardson's Title VII claim for a hostile work environment.

3.  <u>Richardson Fails To State Claims for Discrimination.</u>

To defeat a motion to dismiss a claim for discrimination under Title VII, a plaintiff must plausibly allege that (1) the employer took adverse action against her and that (2) her race, color, religion, sex, or national origin was a motivating factor in the employment decision.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  To plead that the adverse action was "at least in part for a discriminatory reason," she must allege either "facts that directly show discrimination," or "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.*

The defendants argue that Richardson fails to state a claim for discrimination because she fails to allege an adverse employment action.  The Court agrees.  An adverse employment action is a "materially adverse change" in the terms and conditions of employment.  *Sanders v. New*

*York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  "Examples of such a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Id.* (quoting *Terry*, 336 F.3d at 138).  "[N]ot everything that makes an employee unhappy is an actionable adverse action."  *Sank v. City Univ. of New York*, 219 F. Supp. 2d 497, 503 (S.D.N.Y. 2002) (quoting *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002)).

Richardson does not allege that she was terminated.  She remains a "current employee" of KCPA.  FAC ¶ 2.  She does not allege that she lost the title of office manager or that her salary has decreased.  Although Richardson alleges that her "growth and advancement" at KCPA "stopped" when Buckheit became the Commissioner, she does not allege that she ever sought, or was denied, a promotion.  *Id.* ¶ 27.

Richardson argues that she adequately alleges an adverse employment action based on the changes to her responsibilities, but the Court disagrees.  As an initial matter, the only change to her responsibilities that falls within the limitations period is that Buckheit reassigned the task of painting the office.  *Id.* ¶ 82.  This obviously is not "a materially adverse change."  *Sanders*, 361 F.3d at 755.

Even considering her time-barred allegations as background, Richardson alleges a "mere inconvenience" and "alteration of job responsibilities," rather than "significantly diminished material responsibilities."  *Id.*  The Second Circuit has explained that, "with respect to a claim of discrete discriminatory or retaliatory acts, expiration of the limitations period does not bar 'an

employee from using the prior acts as background evidence in support of a timely claim.'"
*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan*, 536
U.S. at 113).  However, the Supreme Court admonished that "[p]rocedural requirements
established by Congress . . . are not to be disregarded by courts out of a vague sympathy for
particular litigants."  *Morgan*, 536 U.S. at 113–14 (quoting *Baldwin County Welcome Center v.
Brown*, 466 U.S. 147, 152 (1984)).  Thus, the Court will consider only whether, in the light of
the time-barred changes to Richardson's responsibilities, the allegation about painting the office
is sufficient to plead an adverse employment action.

Richardson alleges that Buckheit deprived her of certain perks that the previous office
manager enjoyed, including a parking plaque and a larger desk.  FAC ¶¶ 30, 65, 66–68, 82.  He
also took away the keys to the office and the petty cash.  *Id.* ¶ 98–99.  He required her to perform
"tedious tasks" that Richardson found demeaning, such as "taking out the agency outgoing mail,
and fetching and putting his newspaper on his table outside of his office door," *id.* ¶ 31.  These
are "mere inconvenience[s]."  *Sanders*, 361 F.3d at 755.

Richardson also alleges that, in 2017, Buckheit "took away" some of her "office manager
responsibilities," including working with a certain vendor and going on investigations.  FAC ¶¶
72, 102.  However, he had previously required Richardson to assume other responsibilities.  In
particular, shortly after he was appointed in 2015, Buckheit required Richardson to take on the
responsibilities of Ms. Love, a case manager who had retired.  *Id.* ¶¶ 28, 29.  Richardson does
not explain how the responsibilities of a case manager compare to those of office manager.
These changes may have been unwelcome, but Richardson does not clearly allege that, on
balance, she had significantly diminished responsibilities.  Considering the time-barred

allegations merely "as background evidence," *Davis-Garett*, 921 F.3d at 42, the earlier changes are not sufficient to turn the loss of painting the office into an adverse employment action.

Richardson argues that she alleges an adverse employment action because she alleges that she was denied overtime.  The Court disagrees.  She alleges that, on some undated occasion, "Buckheit allowed [a] male employee, Mr. Guzman, to work overtime, while prohibiting [her] from working overtime."  FAC ¶ 103.  Drawing all inferences in Richardson's favor, *Littlejohn*, 795 F.3d at 306, the Court will assume that this incident occurred within the limitations period. "Courts in this Circuit have found that the denial of overtime, where accompanied by a loss in compensation or other material harm, may constitute an adverse employment action."  *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014); *see Mazyck v. Metro. Transp. Auth.*, 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012).  However, Richardson fails to allege that "she suffered any material detriment as a result of being denied overtime."  *Henry*, 18 F. Supp. 3d at 406.  Thus, her "conclusory allegation that she was denied overtime, without more, is insufficient to [plead] an adverse employment action."  *Id.*

4. Richardson Fails To State a Claim for Retaliation.

Title VII includes an anti-retaliation provision that makes it unlawful "for an employer to discriminate against any . . . employee[ ] . . . because [she] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding.  42 U.S.C. § 2000e–3(a).  "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  *Littlejohn*, 795 F.3d at 315–16 (quoting *Hicks v. Baines*, 593 F.3d 159,

164 (2d Cir. 2010)). "The allegations in the complaint need only give plausible support" to each prong of the *prima facie* case. *Id.*

For purposes of a retaliation claim, the requirement of an adverse employment action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Davis-Garett*, 921 F.3d at 43 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). "Rather, a plaintiff may recover for retaliation by 'show[ing] that a reasonable employee would have found the challenged action *materially adverse*, which in this context means *it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination*.'" *Id.* (quoting *White*, 548 U.S. at 68) (emphasis added by the Second Circuit). "Context matters . . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But *to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination*." *Id.* (quoting *White*, 548 U.S. at 68–69) (emphasis added by the Second Circuit).

None of Richardson's allegations of retaliation are timely. Even if the Court were free to consider the time-barred allegations, the First Amended Complaint fails to provide facts that give "plausible support" to each prong of the *prima facie* case for retaliation. *See Littlejohn*, 795 F.3d at 316. In particular, Richardson fails to allege "a causal connection between the protected activity and the adverse employment action." *Id.* Richardson alleges that Buckheit "retaliated against her" for complaining to the EEO "by taking away [an] accommodation" that allowed her to leave early on Fridays, FAC ¶ 47, and "by starting to hold meetings during [her] lunch break[,] preventing her from attending the meetings," *id.* ¶ 51. However, the timeline in her pleading is

too confused to support the inference that the change to her Friday schedule and the timing of the meetings were retaliatory.

Richardson specifically alleges that she first went to EEO on April 5, 2016. *Id.* ¶ 33. She also specifically alleges that, the day before, on "April 4, 2016," she complained about the fact that Buckheit had "chang[ed] her lunch break time on Fridays." *Id.* ¶ 50. In other words, Richardon's own allegations makes clear that Buckheit had already changed her Friday lunch time before she complained to the EEO. Thus, the Court cannot infer that Buckheit changed Richardson's Friday lunch time in retaliation for Richardson engaging in the protected activity of complaining to the EEO.

The timing of Buckheit's allegedly retaliatory lunch time meetings is similarly confused. Richardson alleges that "starting on April 5, 2016, after [her] April 4th complaint" about the change to her Friday lunch break," Buckheit "retaliated against her by starting to hold meetings during [her] lunch break[,] preventing her from attending the meetings." *Id*. ¶ 51. It is not clear to whom Richardson complained about the change to her Friday lunch break, or that this complaint was a protected activity. Not every complaint about a supervisor's unwelcome change to an employee's schedule is a protected activity. Moreover, although Richardson asserts that "Buckheit's goal was to adversely impact her work," *id*. ¶ 52, she does not allege that the meetings during her lunch break would have "contribute[d]significantly to the [her] professional advancement," *Davis-Garett*, 921 F.3d at 43 (quoting *White*, 548 U.S. at 69), or that Buckheit did, in fact, adversely impact her work.

In any event, as previously discussed, all of Richardson's allegations of retaliation are time-barred. There is no timely allegation of retaliation that allows the Court to consider her time-barred allegations as "background evidence in support of [her] timely claim.'" *Davis-*

*Garett*, 921 F.3d at 42 (quoting *Morgan*, 536 U.S. at 113).  The Court is not free to disregard the limitations period established by Congress.  *Morgan*, 536 U.S. at 113–14 (quoting *Baldwin County Welcome Center*, 466 U.S. at 152).  Thus, Richardson's retaliation claim against KCPA must be dismissed.

5.   Richardson Fails To State a Hostile Work Environment Claim.

To prevail on a hostile work environment claim under Title VII, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (quoting *Raspardo*, 770 F.3d at 114).  Courts "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).  "Of course, '[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . *protected characteristic*,' such as race or [sex]." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001)).

Richardson alleges a litany of unwelcome changes and unpleasant experiences at work, but she fails to allege facts that establish a connection between Buckheit's treatment of her and her race, let alone her sex.  To be sure, Richardson is not required at this stage to establish a *prime facie* case of discrimination.  *See Littlejohn*, 795 F.3d at 321.  She must, however, offer facts to support a plausible inference of discriminatory animus.  *See Acosta v. City of New York*, No. 11-cv-856, 2012 WL 1506954, at *8 (S.D.N.Y. Apr. 26, 2012).  Richardson fails adequately to allege discriminatory animus.

Richardson places great weight on allegations that Buckheit "strip[ped] away" some of her responsibilities and assigned them to "individuals outside of [her] protected group."  FAC ¶ 27.  But her specific allegations do not bear out the charge of discrimination.  Richardson does allege that Buckheit reassigned to non-black employees responsibility for the keys to the office, the keys to the petty cash, and the task of painting the office.  *Id.* ¶ 100, 82.  However, she simply alleges that he "took away" the more significant responsibilities, such as "working with [a certain vendor] for estate vault property" and "going on investigations."  *Id.* ¶ 72, 102.  Meanwhile, Buckheit had previously required Richardson to assume other responsibilities— specifically, the responsibilities of Ms. Love, a black case manager who retired.  *Id.* ¶¶ 28, 29.  He also later required her to perform certain responsibilities assigned to Mr. Bob, "a White male employee."  *Id.* ¶ 61.  Taken together, these allegations do not support a plausible inference of *discriminatory* animus.

Richardson also alleges that Buckheit made three disparaging remarks, but it is not clear they were discriminatory, and his remarks clearly were not severe and pervasive enough that a reasonable person would find that they made the work environment hostile or abusive.  *See Raspardo*, 770 F.3d at 114.  The Court fails to see how calling Richardson "Lucy," a reference to

the character in the Peanuts comic strip, FAC ¶ 38, contributes to an objectively discriminatory or "abusive" environment, *Raspardo*, 770 F.3d at 114.  Richardson also alleges that Buckheit once accused her of "having an 'attitude' like a Black woman."  FAC ¶ 73.  Because only "attitude" is in quotation marks, it is not clear whether Buckheit actually accused Richardson of having an attitude "like a Black woman," or whether Richardson merely inferred that his accusation had a racist implication.  *Id.*  On one other occasion, Buckheit said, "'you can take down the barricade,' referring to [Richardson's] workplace and implying that Black individuals are threatening."  *Id.* ¶ 80.  Here too, it seems Richardson inferred a racist "impl[ication]."  However, drawing all inferences in Richardson's favor, *Littlejohn*, 795 F.3d at 306, the Court assumes that Buckheit's remarks were racist.  Nevertheless, two "episod[es]" involving "mere offensive utterance[s]" over the course of four years do not support a hostile work environment claim.  *Raspardo*, 770 F.3d at 114; *Harris*, 510 U.S. at 23.

Richardson also generally accuses Buckheit of a "clear pattern of discrimination targeting Black employees."  FAC ¶ 90.  But, again, her specific allegations do no support a hostile work environment claim.  Richardson asserts that Buckheit "demoted Mr. Culler for the simple reason that Mr. Culler is a Black employee."  *Id.* ¶ 86.  The Court, however, cannot credit her purely conclusory allegation about the circumstances of another employee's demotion.  *Amidax Trading Group v. S.W.I.F.T. SCR*, 671 F.3d 140, 146 (2d Cir. 2011).  Richardson specifically alleges that "on more than one occasion," Buckheit "turn[ed] the office lights off while" she and "other Black employees" were still in the office.  *Id.* ¶ 45.  She also alleges that Buckheit once falsely accused her of stealing a check.  *Id.* ¶ 79.  She adds that he once accused another black employee of "stealing weapons from a deceased's apartment," while white employees were not accused.  *Id.* ¶ 88.  Even if these allegations were sufficient to raise the inference that Buckheit's harassing

behavior was connected to Richardson's "protected characteristic," *Rivera*, 743 F.3d at 20, she fails to allege that the harassment was "more than episodic." *Harris*, 510 U.S. at 23. Turning off the lights "on more than one occasion" and two false accusations do not amount to allegations of "severe or pervasive" harassment. Accordingly, Richardson's hostile work environment claim must be dismissed.

C.   The Court Declines To Exercise Supplemental Jurisdiction.

Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)). Because the Court concludes that it must dismiss Richardson's claims under Section 1981 and Title VII, the Court declines to exercise supplemental jurisdiction over her claims under the New York State Human Rights Law and the New York City Human Rights Law. These claims are dismissed without prejudice.

IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss the First Amended Complaint is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

**Date:   September 29, 2020**
**          New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

22